## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

KEVIN L. BLAKE,

      Plaintiff,

v.                                  Case No. 5:20-cv-137-RV/MJF

LISA GANDY, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin L. Blake alleges that Defendants—three correctional officers at the Calhoun County Correctional Facility—used excessive force and/or failed to intervene to protect him from excessive uses of force. Defendants have moved to dismiss all of Blake's claims. Doc. 60. Blake has responded in opposition. Doc. 64. Because Blake plausibly alleges that some of Defendants' conduct violated the Eighth Amendment, and Defendants are not entitled to qualified immunity as to those claims, the District Court should grant in part and deny in part Defendants' motion to dismiss. Additionally, the District Court should dismiss claims that Blake attempts to assert under Florida common law, because he fails to state a claim upon which relief can be granted, his fifth amended complaint violates the Federal Rules of Civil Procedure with respect to these claims, and he violated the undersigned's orders not to amalgamate multiple claims into one count.

## I. BACKGROUND

Blake is a state prisoner in the custody of the Florida Department of Corrections ("FDC"). Doc. 48 at 15. On February 5, 2020, the FDC transported Blake to the Calhoun County Correctional Facility for "an overnight layover" during a transfer "for court."[1] *Id.* at 6.

On February 6, 2020, sometime between 8:00 a.m. and 12:00 p.m., Blake began masturbating in his cell. *Id.* at 5. Defendant Lisa Gandy, an officer at the Calhoun County Sheriff's Office ("CCSO"), approached Blake's cell, and Blake continued to masturbate in her presence. *Id.* at 14. Without warning, Gandy allegedly sprayed Blake with "chemical agents" and stated, "Choke to death you nasty [racial slur]." *Id.* Blake does not allege that any other CCSO officers were present when Gandy allegedly used chemical agents. Gandy allegedly left Blake "in the cell inhaling chemical agents for an extended amount of time." Doc. 48 at 14.

Defendant Lieutenant Trevor Ramos then approached Blake's cell.[2] *Id.* Blake requested a decontamination shower. *Id.* Ramos responded, "Yeah, as soon as you stop running that cum catcher. I've been doing this confinement shit for ten years

---

[1] The facts stated herein are drawn from Blake's fifth amended complaint and are presumed true for purposes of this report and recommendation. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

[2] Either before or after spraying Blake with chemical agents, Gandy "contacted" Ramos and Defendant Philip McClellan, a CCSO officer. Doc. 48 at 16.

now." *Id.* at 14-15. Blake attempted to respond, but Ramos sprayed Blake with chemical agents. *Id.* at 15. The chemical agents caused "respiratory issues" and "burning of [Blake's] skin and eyes," and Blake reported "choking and spitting blood for a week." Doc. 48 at 6.

Ramos then opened the door to Blake's cell and informed Blake that he would be escorted to a decontamination shower. *Id.* at 16. Blake "placed his arms at his side in a non-threatening manner" and approached the cell door. *Id.* Ramos then stepped to the side and McClellan shot Blake with a taser. *Id.* Blake apparently fell after being tased and he sustained "several injuries," including a cut on his head that required four staples to close. *Id.* at 5-6. Blake alleges that the location of the cut remains tender and that he has "constant" migraines. Doc. 48 at 6.

On March 7, 2022, Blake filed a fifth amended complaint, in which he asserts Eighth-Amendment claims of excessive force and failure to intervene against Gandy, Ramos, and McClellan in their individual capacities.[3] *Id.* at 5-6, 14-18. Blake

---

[3] Blake mentions two other claims in his fifth amended complaint: an unspecified "cruel and unusual punishment[s]" claim, and an unspecified "deliberate indifference" claim. Doc. 48 at 5-6, 16-18; Doc. 64 at 1-2. There is no standalone "cruel and unusual punishment[s]" or "deliberate indifference" claim under the Eighth Amendment. *Jacoby v. Mack*, 755 F. App'x 888, 896 (11th Cir. 2018) (citing *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010)). That is, "cruel and unusual punishment[s]" simply quotes the Eighth Amendment and "deliberate indifference" is the subjective element for claims under the Eighth Amendment. Additionally, Blake's allegations offered in support of his "cruel and unusual punishment[s] and "deliberate indifference" claims are identical to the allegations offered in support of his excessive-force and failure-to-intervene claims. *Compare*

also asserts assault and battery claims in one sentence: "Infurtherance, Plaintiff also alleges the torts of Assault and Battery pursuant to 28 U.S.C. § 1367 for the malicious and wanton actions of Defendant(s) were committed in Bad Faith." *Id.* at 19 (errors in original).[4] On May 23, 2022, Defendants filed a motion to dismiss all of the claims contained in Blake's fifth amended complaint. Doc. 60.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

Doc. 48 at 5-6, 16-17, *with id.* at 6, 14-16, 17-18. Thus, even if Blake is attempting to state a claim of deliberate indifference to a serious medical need, he fails to state the essential elements of such a claim. The undersigned, therefore, construes Blake's fifth amended complaint as stating under the Eighth Amendment only claims of excessive force and failure to intervene.

[4] Blake's fifth amended complaint mentions "Article X. section § 13 Fla. Const. and Article I. section § 17 Fla. Const." Doc. 48 at 19 (errors in original). In his response in opposition to Defendants' motion to dismiss, Blake clarifies that he is not asserting claims under these constitutional provisions. Doc. 64 at 1-2.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Doe v. Samford Univ.*, 29 F.4th 675, 685-86 (11th Cir. 2022) (quotation omitted).

Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But federal courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

## III. DISCUSSION

**A.    Blake's Eighth-Amendment Excessive-Force Claims**

Blake asserts an excessive-force claim under the Eighth Amendment against Gandy, Ramos, and McClellan. Doc. 48 at 5-6. Gandy and Ramos move to dismiss these claims as to them because Blake fails to state a plausible claim for relief and, even if Blake states a plausible claim for relief, they are entitled to qualified immunity. Doc. 60 at 5-7, 9-13. McClellan moves to dismiss the claim against him because he is entitled to qualified immunity.[5] *Id.* at 9-13.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Uses of force by prison officials violate the Eighth Amendment when the force is applied "maliciously and sadistically to cause harm," not when the force is applied in a "good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Eighth-Amendment excessive-force claims have a subjective and an objective element: "the official must have . . . 'acted with a sufficiently culpable state of mind' . . ., and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir.

---

[5] McClellan does not argue that Blake fails to state a plausible excessive-force claim against him. Doc. 60 at 5-7.

2020) (quoting *Hudson*, 503 U.S. at 8). Under the subjective element, the force must be applied "sadistically and maliciously . . . for the very purpose of cause harm." *DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021) (quoting *Sconiers*, 946 F.3d at 1265). Five factors are relevant to determining if the force was applied "sadistically and maliciously":

1.     the need for force;

2.     the relationship between that need and the amount of force used;

3.     the extent of the resulting injury;

4.     the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to him; and

5.     any efforts made to temper the severity of a forceful response.

*Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (citing *Whitley*, 475 U.S. at 321); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007); *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). When considering these factors, courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam)); *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016).

Under the objective element, the use of force must be "harmful enough" or "sufficiently serious." *DeJesus*, 14 F.4th at 1195 (*Sconiers*, 946 F.3d at 1265). That is because the Eighth Amendment does not preclude *de minimis* uses of force. *Id.* (citing *Sconiers*, 946 F.3d at 1265-66); *Sconiers*, 946 F.3d at 1265 ("Not every malevolent touch by a prison guard gives rise to a federal cause of action.") (quoting *Wilkins*, 559 U.S. at 37). The Eighth Amendment instead "prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1266 (quoting *Wilkins*, 559 U.S. at 37) (citation and internal quotation marks omitted)). Eighth-Amendment claims of excessive force, therefore, should be "based on the nature of the force rather than the extent of the injury." *Wilkins*, 559 U.S. at 34; *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019); *Logan v. Smith*, 439 F. App'x 798, 802 (11th Cir. 2011).

### 1.  *Blake Alleges a Plausible Claim Against Gandy*

Blake alleges that Gandy violated the Eighth Amendment because she approached Blake's cell as Blake was masturbating and sprayed Blake with chemical agents without first providing Blake a warning. Doc. 48 at 14. Defendants argue that this claim should be dismissed because Blake does not allege that Gandy's use of chemical agents "caused any substantial or long-lasting injury or was unreasonable

given [Blake's] behavior and the need to maintain order and discipline within the jail setting." Doc. 60 at 6.

In some instances it is permissible for a correctional officer to employ force to coerce an inmate to obey a command. *See Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (holding that there was a need for force because the prisoner disregarded orders); *Burke v. Bowns*, 653 F. App'x 683, 696 (11th Cir. 2016) (noting that force was needed because the prisoner-plaintiff "refused numerous requests to submit to handcuffs"); *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("A [3-5 second] burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailor's orders.") (citation omitted). According to the facts Blake alleges, however, Gandy did not order him to cease masturbating. Taking the facts in the light most favorable to Blake, Gandy did not need to use force when she deployed the chemical agents, and Gandy did not attempt to use any lesser means before her use of chemical agents.

The first two factors relevant to the subjective element of an Eighth-Amendment excessive-force claim—whether force was needed and the relationship between that need and the amount of force used—therefore, suggest that Gandy used excessive force. *See Furnace v. Sullivan*, 705 F.3d 1021, 1029 (9th Cir. 2013) ("Officers cannot justify force as necessary for gaining inmate compliance when inmates have been given no order with which to comply."); *Guitron v. Paul*, 675

F.3d 1044, 1046 (7th Cir. 2012) (noting that the correctional officer did not violate the Eighth Amendment, in part, because he "did not use any force until [the plaintiff] disobeyed a command that was designed to maintain order within the prison"); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) ("A basis for an Eighth Amendment claim exists when . . . an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat.") (citing *Foulk v. Charrier*, 262 F.3d 687, 691-92, 702 (8th Cir. 2001)).

As to the third factor—the extent of the resulting injury—Blake alleges that:

- he had difficulty breathing immediately after Gandy sprayed him with chemical agents;

- the chemical agents resulted in "respiratory issues" and "burning of [his] skin and eyes"; and

- he was "choking and spitting blood for a week."

Doc. 48 at 6, 14. Thus, Blake alleges more than *de minimis* injuries.

As to the fourth factor—the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to him—Blake was confined alone in a cell at the time Gandy deployed the chemical agents. Blake, therefore, did not pose a threat to Gandy or anyone else.

As to the fifth factor—any efforts made to temper the severity of a forceful response—Blake does not allege that Gandy took any action to mitigate the effects

of the chemical agents. Rather, Blake alleges that Gandy simply walked away. *Id.* at 16-17. True, Blake alleges that Gandy "contacted" Ramos and McClellan, but it is not clear that this was done to ameliorate the effects of the chemical agents. *Id.* at 16.

Finally, Blake alleges that as Gandy sprayed him with chemical agents, Gandy stated, "Choke to death you nasty [racial slur]." *Id.* at 14. Words alone "are far from determinative" of a defendant's bad faith, "[b]ut threatening language as part of a totality of circumstances can be relevant to what is constitutionally reasonable" or "to the determination of reasonable inferences about the [defendant's] subjective state of mind." *Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (citing *Evans v. Stephens*, 407 F.3d 1272, 1281-82 & n.12 (11th Cir. 2005)). One could draw a reasonable inference from Gandy's statement that her use of force was motivated by a desire to cause Blake pain, rather than a good-faith effort to "maintain and restore discipline." *Thomas*, 614 F.3d at 1304 (noting that under the subjective element, force must be applied "maliciously and sadistically for the very purpose of causing harm"). This, along with the other factors discussed above, indicate that Blake plausibly alleges the subjective-intent element of an Eighth-Amendment excessive-force claim.

As to the objective element of Blake's excessive-force claim, "where chemical agents are used unnecessarily, without penological justification, or for the

very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas*, 614 F.3d at 1311 (citing *Danley*, 540 F.3d at 1311); *Sconiers*, 946 F.3d at 1268 (noting that if a defendant's use of force satisfies the subjective element, the use of force also satisfies the objective element). Because Blake plausibly alleges that Gandy used chemical agents unnecessarily or for the very purpose of punishment or harm, Blake's allegations also satisfy the objective element of an Eighth-Amendment excessive-force claim.

For these reasons, Blake plausibly alleges that Gandy's use of chemical agents was excessive and violative of his rights under the Eighth Amendment.

### 2. *Blake Alleges a Plausible Claim Against Ramos*

Blake also asserts an Eighth-Amendment excessive-force claim against Ramos. Doc. 48 at 14-15. Defendants argue that this claim should be dismissed because Ramos had a "valid penological purpose" for using chemical agents. Doc. 60 at 5-7. Namely, Defendants argue that Ramos needed to quell Blake's disturbance. *Id.* at 7.

Although Blake concedes that he kicked his cell door "two or three times," he alleges that he stopped "well before" Ramos approached his cell. Doc. 48 at 14-15. Blake denies that he was causing a disturbance or refusing to comply with Ramos's orders when Ramos sprayed him with chemical agents. *Id.* at 15. Thus, Blake alleges that his conduct did not necessitate the use of chemical agents or that any necessity

certainly receded by the time Ramos deploy the chemical agents. "[O]nce the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment . . . ." *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). Based on Blake's allegations, Ramos did not need to use force and the amount of force used necessarily was excessive.

As to the third factor—the extent of the resulting injury—Blake alleges that the chemical agents resulted in "respiratory issues," "burning of [Blake's] skin and eyes," and Blake "choking and spitting blood for a week." Doc. 48 at 6, 14. Thus, Blake alleges more than *de minimis* injuries.

As to the fourth factor—the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to him—Blake was confined alone in a cell at the time Ramos deployed the chemical agents, and Blake denies that he was causing a disturbance or disobeying an order. *Id.* at 14-15. Blake sufficiently alleges that he did not pose a threat to Ramos or anyone else.

As to the fifth factor—any efforts made to temper the severity of a forceful response—Blake does not allege that Ramos acted to ameliorate the chemical agents' effects. Blake alleges only that Ramos told Blake he would be afforded a decontamination shower, but Blake does not allege whether he actually received such a shower. *Id.* at 17.

Based on these factors, Blake plausibly alleges the subjective-intent requirement of an Eighth-Amendment excessive-force claim.

As to the objective element of Blake's excessive-force claim, Blake plausibly alleges that Ramos used chemical agents unnecessarily or for the very purpose of punishment or harm. Nothing further is required regarding the objective element. *See Sconiers*, 946 F.3d at 1268; *Thomas*, 614 F.3d at 1311.

For these reasons, Blake plausibly alleges that Ramos's use of chemical agents constitutes an excessive use of force in violation of the Eighth Amendment.

### 3.    *At This Stage, Defendants Are Not Entitled to Qualified Immunity*

All three Defendants—Gandy, Ramos, and McClellan—argue that they are entitled to qualified immunity regarding Blake's excessive-force claims. Doc. 60 at 9-12.

"Qualified immunity 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). A plaintiff must show that qualified immunity should not apply because (1) a defendant "violated a constitutional right" and (2) that "right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (quoting *Caldwell v. Warden, FCI Talladega*,

748 F.3d 1090, 1099 (11th Cir. 2014)); *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021); *Cantu v. City of Dothan*, 974 F.3d 1217, 1228 (11th Cir. 2020) (citations omitted). If the plaintiff fails to satisfy either element, the plaintiff's claim fails. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2019) (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)). Qualified immunity must be denied at the motion-to-dismiss stage if the court concludes "both that the allegations in the complaint . . . establish a constitutional violation *and* that the constitutional violation was clearly established." *Id.* (quoting *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019)).

### (a).   Blake's Excessive-Force Claims Against Gandy and Ramos

As noted above, Blake plausibly alleges that Gandy and Ramos violated the Eighth Amendment. Blake also must plausibly allege, therefore, that Gandy's and Ramos's constitutional violations were "clearly established." *Patel*, 969 F.3d at 1181 (quoting *Caldwell*, 748 F.3d at 1099); *Cox*, 15 F.4th at 1357; *Cantu*, 974 F.3d at 1228. A constitutional violation is "clearly established" if, among other things, "a broader, clearly established principle controls the facts of the situation," or "the conduct so obviously violates the [C]onstitution that prior case law is unnecessary." *Wade v. Daniels*, __ F.4th __, 2022 WL 2115325, at *2 (11th Cir. 2022) (citing *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017)).

"[T]he subjective element required to establish [an Eighth-Amendment excess-force claim] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established . . . ." *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002); *Skrtich*, 280 F.3d at 1301; *see Patel*, 969 F.3d at 1186 (noting that this exception to qualified immunity "continues to apply to Eighth Amendment claims"). Because Blake alleges plausible Eighth-Amendment excessive-force claims against Gandy and Ramos, Gandy and Ramos are not entitled to qualified immunity at this stage. The District Court, therefore, should deny Defendants' motion to dismiss as to Blake's excessive-force claims against Gandy and Ramos.

### (b).   Blake's Excessive-Force Claim Against McClellan

Blake also alleges a plausible excessive-force claim against McClellan.[6] According to Blake's fifth amended complaint, after Ramos sprayed him with chemical agents, Ramos opened Blake's cell door. Doc. 48 at 16. As Blake approached the cell door, with "his arms at his side in a non-threatening manner," Ramos stepped to the side and McClellan tased Blake with a taser. *Id.* When McClellan allegedly tased Blake, Blake allegedly was not being disruptive or disobeying an order, and thus there was no legitimate reason to deploy a taser.

---

[6] As noted above, McClellan does not move to dismiss Blake's excessive-force claim against him for failure to state a plausible claim for relief. Doc. 60 at 5-7.

*William v. Rickman*, 759 F. App'x 849, 851 (11th Cir. 2019) (noting that "there must be a valid penological reason for . . . a use of force"). Blake, therefore, asserts a plausible excessive-force claim under the Eighth Amendment against McClellan and, as a result, McClellan is not entitled to qualified immunity at this stage. *Johnson*, 280 F.3d at 1321-22; *Skrtich*, 280 F.3d at 1301; *see Patel*, 969 F.3d at 1186. Thus, the District Court should deny Defendants' motion to dismiss as to Blake's excessive-force claim against McClellan.

**B.    Blake's Eighth-Amendment Failure-to-Intervene Claims**

Blake next asserts an Eighth-Amendment failure-to-intervene claim against Gandy, Ramos, and McClellan. Doc. 48 at 16-17.

A failure-to-intervene claim under the Eighth Amendment has two elements: (1) an officer "fails or refuses to intervene when a constitutional violation . . . takes place in his presence," and (2) the "officer must be 'in a position to intervene.'" *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (first quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); then quoting *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996)); *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012); *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010).

1.    ***Blake Fails to Allege a Plausible Claim Against Gandy***

Gandy moves to dismiss Blake's failure-to-intervene claim against her because Blake fails to allege that Gandy was in a position to intervene and prevent Ramos's and McClellan's alleged misconduct. Doc. 60 at 8.

According to Blake, after Gandy sprayed Blake with chemical agents, Gandy walked away from Blake's cell, and Blake was left for "an extended amount of time." Doc. 48 at 14. Blake does not know if Gandy was in the hallway or the office "two rooms over" from Blake's cell at the time of Ramos's and McClellan's alleged misconduct. *Id.* at 16. Blake alleges only that Gandy was in "the vicinity." Additionally, Blake alleges that once he left his cell after being tased by McClellan, Blake "witnessed the Defendant(s) standing in the hallway." *Id.* at 17. Blake does not specify which of the three Defendants were standing in the hallway.

These allegations simply are too ambiguous to plausibly allege that Ramos's and McClellan's alleged misconduct occurred in Gandy's presence or that Gandy was in a position to intervene. Although Blake makes the conclusory assertion that Gandy "possessed foreknowledge of what [Ramos] and [McClellan] intended to do," Blake offers no factual support for this allegation and does not indicate how he is privy to Gandy's thoughts. Blake does not allege that Ramos and McClellan ever communicated their intent to spray Blake with chemical agents or to tase him.

Despite having four opportunities to amend his complaint, Blake fails to allege a plausible Eighth-Amendment failure-to-intervene claim against Gandy. The District Court, therefore, should dismiss Blake's failure-to-intervene claim against Gandy.

### 2.  *Blake Alleges a Plausible Claim Against Ramos*

Ramos moves to dismiss Blake's failure-to-intervene claim against him because "the alleged acts due not rise to the level of excessive force." Doc. 60 at 8. But as noted above, Blake plausibly alleges that McClellan used excessive-force in violation of the Eighth Amendment and that Ramos was present when McClellan used this force.[7] Doc. 48 at 17. In fact, Blake alleges that Ramos stepped to the side so that McClellan could tase Blake. *Id.* According to Blake's allegations, Ramos clearly was in a position to prevent McClellan from tasing Blake but did not do so.

Because Blake alleges that Ramos failed to intervene in a constitutional violation that occurred in Ramos's presence—McClellan tasing Blake—and that Ramos was in a position to intervene, Blake states a plausible failure-to-intervene claim under the Eighth Amendment against Ramos. For that same reason, Ramos is not entitled to qualified immunity as to Blake's failure-to-intervene claim. *Johnson*,

---

[7] Blake does not allege that Ramos was present for, or in a position to intervene in, Gandy's alleged use of excessive force. Blake's fifth amended complaint, therefore, asserts a failure-to-intervene claim only as to Ramos's failure to intervene with respect to McClellan's alleged use of excessive force.

280 F.3d at 1321-22; *Skrtich*, 280 F.3d at 1301; *see Patel*, 969 F.3d at 1186. The District Court, therefore, should deny Defendants' motion to dismiss as to Blake's failure-to-intervene claim against Ramos.

### 3.    *Blake Fails to Allege a Plausible Claim Against McClellan*

McClellan moves to dismiss Blake's failure-to-intervene claim against him because Blake fails to allege that McClellan was present for, or in a position to intervene in, Ramos's alleged misconduct.[8] Doc. 60 at 8.

In his fifth amended complaint, Blake does not actually allege that McClellan failed to intervene in any unconstitutional uses of force. Doc. 48 at 16-17. Blake also does not allege McClellan's location at the time of Ramos's alleged use of force. Additionally, in his response in opposition to Defendants' motion to dismiss, Blake requests that this claim against McClellan be dismissed. Doc. 64 at 2. Thus, not only does Blake fail to include essential elements of this claim despite having four opportunities to amend and supplement his allegations, he also requests that this claim be dismissed. *Twombly*, 550 U.S. at 555 (noting that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level"). The District Court, therefore, should dismiss Blake's failure-to-intervene claim against McClellan.

---

[8] As noted above, Blake does not allege that McClellan was present for, or in a position to intervene in, Gandy's alleged use of excessive force.

C.     <u>**Blake's Assault and Battery Claims Under Florida Law**</u>

Blake also asserts—in one sentence—assault and battery claims.[9] Doc. 48 at 19. Defendants have moved to dismiss these claims. Doc. 60 at 2.

As noted above, a civil "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Legal conclusions, unlike factual allegations, are not accepted as true. *Id.* When a more carefully drafted complaint might state a claim for relief, a district court must afford a *pro se* plaintiff at least once chance to amend his complaint. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019). A district court, however, is not required to grant leave to amend when any amendment would be futile. *Id.*

---

[9] Although Blake does not allege that Florida law applies to these claims, the conduct at issue occurred in Florida and Florida is the forum state. The undersigned, therefore, assumes that Blake is attempting to asserts these claims under Florida law. *See Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (noting that courts sitting in diversity apply the forum state's substantive law) (citing *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1445 (11th Cir. 1998)).

In his fifth amended complaint, Blake separated each Eighth-Amendment claim—using a separate count number and heading—and identified the defendant against which each claim is asserted. Doc. 48 at 5-6, 14-18. Thus, Blake was aware of his obligation to separate claims, not aggregate multiple claims into one sentence, and identify against which defendant each claim is asserted. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (noting that a complaint that fails to separate into a different count each cause of action or that "assert[s] multiple claims against multiple defendants without specifying which of the defendants . . . the claim is brought against" violates the Federal Rules of Civil Procedure) (citation omitted).

Additionally, on four occasions the undersigned ordered Blake not to aggregate multiple claims into one sentence or paragraph. Doc. 34 at 5-7; Doc. 36 at 5-7; Doc. 40 at 4-6; Doc. 47 at 4-6. Furthermore, the undersigned advised Blake that he must support his claims with factual allegations and separate into a different count each claim for relief and specify against which defendant each claim is brought. Doc. 34 at 5-7; Doc. 36 at 5-7; Doc. 40 at 4-6; Doc. 47 at 4-6. The undersigned also warned Blake that his failure to separate his claims and failure to specify which defendant each is asserted against would preclude Defendants from determining the specific allegations that Blake asserts against each defendant, and likely would prevent the District Court from granting Blake his requested relief. *E.g.*, Doc. 46 at 5-6.

Despite having four opportunities to correct this deficiency, Blake's fifth amended complaint includes a one-sentence attempt to state assault and battery claims under Florida law. Docs. 35, 38, 44, 48. Blake does not mention the elements of these claims[10]; does not support these claims with factual allegations; does not separate into a different count each claim for relief; and does not specify the defendants against whom he asserts these claims. Blake's one sentence, therefore, does not set forth plausible assault and battery claims under Florida law. Blake also clearly violated the undersigned's orders by attempting to assert two claims via one sentence in his fifth amended complaint. Doc. 34 at 5-7; Doc. 36 at 5-7; Doc. 40 at 4-6; Doc. 47 at 4-6. "Federal courts possess an inherent power to dismiss a complaint for failure to comply with a court order." *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1126 (11th Cir. 2017); *Costello v. United States*, 365 U.S. 265, 286-87 (1961); *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009).

---

[10] Under Florida law, an assault is "any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *McDonald v. Ford*, 223 So. 2d 553, 555 (Fla. Dist. Ct. App. 1969); *Winn & Lovett Grocery Co. v. Archer*, 171 So. 214, 217 (1936). A battery, on the other hand, is "the intentional infliction of a harmful or offensive contact upon the person of another." *Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So. 2d 52, 55 (Fla. Dist. Ct. App. 1984) (citation omitted); *Brown v. J.C. Penney Corp.*, 521 F. App'x 922, 923-24 (11th Cir. 2013).

Because Blake's assault and battery claims—which he asserts in one sentence—violate the Federal Rules of Civil Procedure, fail to state a claim upon which relief can be granted, and violate the undersigned's orders not to include aggregated and undeveloped claims, the District Court should dismiss Blake's assault and battery claims.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss as follows:

     a.    **GRANT** Defendants' motion to dismiss as to Blake's Eighth-Amendment failure-to-intervene claims against Defendants Lisa Gandy and Philip McClellan;

     b.    **GRANT** Defendants' motion to dismiss as to Blake's claims of assault and battery; and

     c.    **DENY** Defendants' motion to dismiss as to Blake's remaining claims.

2.    Refer this action back to the undersigned for further proceedings.

At Pensacola, Florida, this <u>24th</u> day of June, 2022.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**